IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Edward W. Nottingham**

Civil Action No. 05–cv–01322–EWN–PAC

STEPHEN WALTER PHILLIPS,

     Plaintiff,

v.

THE PEPSI BOTTLING GROUP,

     Defendant.

---

## ORDER AND MEMORANDUM OF DECISION

---

This is an age discrimination case. This matter is before the court on "Plaintiff's Motion for Recusal of Judge Nottingham Pursuant to 28 U.S.C. § 144 and § 455(a) and (b)(1)," filed November 1, 2007. Jurisdiction is premised upon 28 U.S.C. §§ 1331, 1367.

## FACTS

### 1.    *Factual Background*

#### a.    *Affidavit Allegations*

In support of his request for recusal pursuant to 28 U.S.C. § 144, Plaintiff has submitted an affidavit, which I must presume to be true for the purposes of section 144. *Glass v. Pfeffer*, 849 F.2d 1261, 1267 (10th Cir. 1988); *see also United States v. Balistrieri*, 779 F.2d 1191, 1199

(7th Cir. 1985) ("[T]he judge must assume that the factual averments . . . are true, *even if he knows them to be false*." [emphasis added]).

On September 20, 2007, Magistrate Judge Kristen L. Mix held a settlement conference for the instant case.  (Pl.'s Mot. for Recusal of Judge Nottingham Pursuant to 28 U.S.C. §§ 144, 455[a], [b][1], Ex. 1 ¶ 2 [Pl. Aff.] [filed Nov. 1, 2007] [hereinafter "Recusal Mot."].)  During a conversation between the magistrate, Plaintiff, and Plaintiff's counsel, Plaintiff recalls that the magistrate stated:

> "The biggest problem with your case is that Judge Nottingham hates employment cases and there's nothing you can do about, it's random.  Now don't get me wrong, he's a fine judge, but he just hates employment cases.  That's why he will try to find anything in the summary judgment briefs to say there's no material issues and grant summary judgment, and if he doesn't, he will make it tough at trial, and you won't win."

(*Id.*, Ex. 1 ¶ 9 [Pl. Aff.].)  Plaintiff concludes: "I believe as a result of Magistrate Judge Mix's statements that Judge Nottingham had [sic] a personal bias or prejudice against me and I have no chance of prevailing in this litigation."  (*Id.*, Ex. 1 ¶ 16 [Pl. Aff.].)

### b.    *Further Allegations*

Plaintiff's counsel, James A. Carleo, also submitted an affidavit on Plaintiff's behalf, the veracity of which I am *not* required to presume.  *See* 28 U.S.C.A. § 144 (West 2007) (stating that the affidavit supporting recusal is to be made by the "party to [a] proceeding in district court").  Mr. Carleo submitted the affidavit as evidence of my biased conduct toward Plaintiff in connection with a discovery dispute.  (*See* Recusal Mot. at 2–4.)  In his sworn affidavit, Mr. Carleo recounts the following sequence of events:

> In May 2006, following discovery and summary judgment briefing, [Defendant] produced, for the first time, certain documents from the files of Scott Beijer,

Plaintiff's supervisor, at the beginning of Plaintiff's alleged declining performance. In February 2007, Judge Nottingham had no choice but to allow Plaintiff to reopen discovery after the [c]ourt was advised that [Defendant] had withheld critical termination documents, including a May 10, 1999 letter.  Disturbingly, despite the fact that neither [Plaintiff] nor I had done anything improper, Judge Nottingham's tone reflected his displeasure in having to find in Plaintiff's favor.  Judge Nottingham would act upon his displeasure by granting Plaintiff "no relief" relief [sic].  Judge Nottingham restricted Plaintiff's discovery into the May 10, 1999 termination letter to a narrow re-deposing of Scott Beijer, who said, in his affidavit, he had "no recollection of the circumstances surrounding the . . . termination letter dated May 10, 1999."  Therefore, when Judge Nottingham limited the discovery to Beijer's deposition he effectively denied the discovery he claimed to have allowed.  Judge Nottingham did not hesitate to demean [Plaintiff] or me in his February 27, 2007 Order.  He stated, emphatically, that Plaintiff "has no one to blame but himself" for the narrow discovery ordered by the [c]ourt, concluding that "Plaintiff is entitled to nothing more."  Yet, he spared Defendant and its counsel all unkindness in the face of their clear violations.

(*Id.*, Ex. 3 ¶¶ 24–29 [Carleo Aff.].)

## 2.    *Procedural History*

After summary judgment briefing on Plaintiff's age discrimination claim was complete, Defendant discovered and produced two new pieces of evidence.  Thus, on June 19, 2006, Plaintiff filed a motion for continuance of summary judgment proceedings to permit discovery to be reopened, arguing he needed to conduct discovery into the new evidence — namely, a May 1999 letter from Mr. Beijer's files and a slide entitled "headcount" from a presentation by a human resources employee, Renee Cedeno.  (Pl.'s Mot. Pursuant to Fed. R. Civ. P. 56[f] for a Continuance of Summ. J. Proceedings to Permit Disc. to be Reopened [filed June 19, 2006].)

On February 13, 2007, I granted Plaintiff's motion.  (Order [filed Feb. 13, 2007] [hereinafter "First Order"].)  With respect to the May 1999 letter, I observed:

Although Plaintiff *was not terminated until 2004*, this letter, which is unsigned and was not delivered to Plaintiff, discusses severance benefits and states that Plaintiff's "employment has been terminated effective May 10, 1999."  The letter

was found in the files of Scott Beijer, Plaintiff's supervisor at the time it was written.  Plaintiff bemoans the fact that he was unable to question Mr. Beijer about the letter, which he asserts confirms that Mr. Beijer was the first in a line of supervisors who conspired to build "a case against [him] for termination" based on his age.

(*Id.* at 2–3 [emphasis added].)  It is worth noting that in opposing Plaintiff's continuance motion, Defendant emphasized the undisputed fact that by the time Plaintiff was terminated in 2004, he "had worked under *three supervisors subsequent to Mr. Beijer.*"  (Def.'s Resp. to Pl.'s Mot. Pursuant to Fed. R. Civ. P. 56[f] for a Continuance of Summ. J. Proceedings to Permit Disc. to be Reopened at 6 [filed July 19, 2006] [emphasis added].)

Nevertheless, I balanced my impression that further discovery would be futile against my understanding that Plaintiff was entitled to confront his adversary with regard to the belatedly produced evidence:

Defendant employs affidavits to explain that both the [May] 1999 . . . letter and the headcount [slide] are entirely consistent with its contention that Plaintiff's termination was motivated solely by Plaintiff's poor job performance.  It strikes me as inequitable to permit a party that failed to produce evidence in a timely manner to short-circuit discovery into such evidence by furnishing affidavits assuring the late-produced evidence is inconsequential.  Moreover, further discovery into the documents may lead to unique evidence lending materially different support to Plaintiff's pretext argument than the evidence presently supporting Plaintiff's summary judgment response.  Indeed, if Plaintiff were able to elicit testimony suggesting the unreliability of either Mr. Beijer's or Ms. Cedeno's affidavit, one might reasonably infer therefrom that Defendant's poor performance rationale for firing Plaintiff is pretextual.  While it may well be that further discovery will serve only to strengthen Defendant's position, Plaintiff is willing to take that risk.  In light of circumstances in which the new evidence came to light, the court is loath to stand in his way.

(First Order at 6 [citations omitted].)  I then proceeded to state my reluctance to grant Plaintiff "*carte blanche* to conduct extensive discovery," noting that, "[b]eyond his request that discovery be reopened to the 'appropriate extent needed,' Plaintiff neglect[ed] to detail the . . . scope of the

discovery he would seek." (*Id.* at 6–7.) Thus, I authorized Plaintiff to engage in specified limited discovery by: (1) redeposing Mr. Beijer and Ms. Cedeno; and (2) requesting copies of the entire slide show in which the headcount slide appeared. (*Id.* at 7.)

Eight days later, Plaintiff filed a motion to conduct "alternative discovery" regarding the May 1999 letter. (Pl.'s Mot. to Conduct Alternative Disc. Regarding the May 10, 1999 Letter and Beijer Dep. [filed Feb. 21, 2007].) Therein, Plaintiff requested that he be permitted to: (1) submit two sets of written interrogatories; (2) depose Mr. Beijer by telephone; (3) take a Rule 30(b)(1) deposition; and (4) further extend discovery deadlines. (*Id.* at 4.)

On February 27, 2007, I denied Plaintiff's request:

> If the limited discovery this court authorized is narrower than Plaintiff would like, he has no one to blame but himself, since his motion for continuance contained only the vague request that he be allowed to "take depositions and engage in written discovery." The court granted Plaintiff's initial motion for continuance reluctantly, balancing Plaintiff's entitlement to confront Defendant's explanation of two late-produced documents against the court's understanding that neither the documents nor further discovery would undermine Defendant's stance on summary judgment. In light of the fact that Defendant had withheld the documents, the court decided that the equities tipped — barely — in Plaintiff's favor. Thus, the court afforded Plaintiff the limited opportunity to redepose two witnesses and request a particular set of documents. Plaintiff is entitled to nothing more.

(Order [filed Feb. 27, 2007].)

Thereafter, summary judgment briefs were again submitted. On September 20, 2007, the magistrate judge held an unsuccessful settlement conference. (*See* Min. Entry [filed Sept. 20, 2007].) On October 23, 2007, I scheduled a hearing regarding Defendant's motion for summary judgment for November 9, 2007. (*See* Min. Order [filed Oct. 23, 2007].)

On November 1, 2007, Plaintiff filed a motion for recusal. (Recusal Mot.) In light of the magistrate judge's comments and my discovery-related orders, Plaintiff contends that: (1) because

I harbor personal bias against Plaintiff, I must recuse pursuant to 28 U.S.C. §§ 144, 455(b)(1); and (2) because my impartiality could reasonably be questioned, I must recuse pursuant to 28 U.S.C. § 455(a). (*Id.*) On November 7, 2007, Defendant filed a response to Plaintiff's motion. (Def.'s Resp. to Pl.'s Mot. for Recusal of Judge Nottingham Pursuant to 28 U.S.C. §§ 144, 455[a], [b][1] [filed Nov. 7, 2007].)

## ANALYSIS

### 1.    *Legal Framework*

Under 28 U.S.C. § 144, a district judge must recuse if a party files a "timely and sufficient affidavit" establishing that the judge has a personal bias or prejudice against the party seeking recusal, or in favor of the adverse party. 28 U.S.C.A. § 144 (West 2007). Although all factual allegations in an affidavit filed under section 144 must be presumed true, such an affidavit is "strictly construed against the affiant and there is a substantial burden on the moving party to demonstrate that the judge is not impartial." *SEC v. Solv-Ex Corp.*, 164 F. App'x 765, 766 (10th Cir. 2006) (citing *United States v. Burger*, 964 F.2d 1065, 1070 [10th Cir. 1992]). "'The bias charged must be of a personal nature and must be such as would likely result in a decision on some basis other than what the judge learned from his participation in the case.'" *Id.* (quoting *United States v. Irwin*, 561 F.2d 198, 200 [10th Cir. 1977]).

Under 28 U.S.C. § 455, there is a "considerably broader scope for claims of prejudice and bias." *Glass*, 849 F.2d at 1268. Recusal is appropriate where the judge's impartiality "might reasonably be questioned," or where the judge has "a personal bias or prejudice concerning a party." 28 U.S.C.A. § 455(a), (b)(1) (West 2007). No affidavits are required. *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987). Under this statute, the judge must recuse when

there is the appearance of bias, regardless of whether there is actual bias. *Bryce v. Episcopal Church in the Diocese of Colo.*, 289 F.3d 648, 659 (10th Cir. 2002). The test is whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality. *Id.*

### 2.    Application

Plaintiff contends I must recuse myself under the sections 144 and 455 because of the magistrate judge's comments and because Plaintiff believes my discovery rulings were "a façade, designed to facilitate the appearance of due process and fairness." (Recusal Mot.) For the reasons set forth below, I find that recusal is unwarranted.

### a.    Timing

Under both recusal statutes, "[a] motion to recuse must be filed promptly after the allegedly disqualifying facts are discovered." *Hinman*, 831 F.2d at 938; *see also United States v. Pearson*, 203 F.3d 1243, 1276 (10th Cir. 2000) ("A promptly filed motion conserves judicial resources and alleviates the concern that it is motivated by adverse rulings or an attempt to manipulate the judicial process."). In the instant case, Plaintiff offers no explanation for the fact that his motion was filed forty-two days after the magistrate judge's comments — and eight months after my discovery rulings.[1] *Cf. United States v. Sykes*, 7 F.3d 1331, 1339 (7th Cir. 1993) (stating a recusal motion "is not timely unless filed at the earliest moment after [the movant

---

[1] In contrast to the large span of time between the date when Plaintiff's motion was filed and the occurrence of the events upon which the motion is premised, there was a mere eight-day gap between the filing of Plaintiff's motion and the scheduled date of the summary judgment hearing in Plaintiff's case. (*See* Min. Order [filed Oct. 23, 2007].) Thus, the timing of Plaintiff's recusal motion may raise the concern that it is an "attempt to manipulate the judicial process." *Pearson*, 203 F.3d at 1276.

acquires] knowledge of the facts demonstrating the basis for such disqualification"). Accordingly, the timing of Plaintiff's motion does not weigh in his favor.

### b.      Prior Rulings

Plaintiff contends that my rulings in connection with his motion for continuance reveal a nefarious plan to create an "appearance of process and fairness" to hide my true bias against him. (Recusal Mot. at 3–4.)  To the questionable extent that these rulings might reasonably be construed as adverse to Plaintiff, this line of argument flaunts well-established law.  "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion."  *Liteky v. United States*, 510 U.S. 540, 555 (1994).

To the questionable extent that the "tone" of my discovery-related orders could reasonably be said to reflect bias against Plaintiff (*see* Recusal Mot., Ex. 2 ¶ 26 [Carleo Aff.]), I note, emphatically, that "[i]n evaluating disqualification under section 455, the question is whether the court *is biased against a party*, not whether the court is annoyed with the party's counsel." *Gomez v. St. Jude Med. Daig Div., Inc.*, 442 F.3d 919, 938 (5th Cir. 2006) (emphasis added). Moreover, judicial remarks "that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Liteky*, 510 U.S. at 555.  Thus, I find that my discovery rulings could not reasonably be said to suggest an appearance of bias.

### c.      The Magistrate Judge's Comments

Based on the magistrate's comments, Plaintiff asserts that I have "a personal bias or prejudice against him."  (Recusal Mot., Ex. 1 ¶ 16 [Pl. Aff.].)  I must underscore, however, that the magistrate's comments are wholly devoid of any mention of my feelings toward Plaintiff.  (*See*

*id.*, Ex. 1 ¶ 9 [Pl. Aff.].)  Instead, the comments merely reflect the magistrate's perception that the undersigned "hates employment cases."  (*Id.*)

Even accepting Plaintiff's affidavit as true and further assuming the magistrate's statements to be *accurate*, my "judicial leaning" is an improper basis upon which to premise a recusal motion.  *See Phillips v. Joint Legislative Comm. on Perform. & Expend. Rev.*, 637 F.2d 1014, 1020 (5th Cir. Unit A Feb. 1981) (holding that a motion for disqualification may not be predicated "on a demonstrated tendency to rule any particular way, []or on a particular judicial leaning or attitude derived from [a judge's] experience on the bench"); *Duplan Corp. v. Deering Milliken*, 400 F. Supp. 497, 516 (D.S.C. 1975) ("The bias and prejudice is . . . not disqualifying, if it relates to a class of cases, 'for in that event the prejudice instead of being personal would relate to the nature of the proceeding itself.'" [quoting *United States v. 16,000 Acres of Land*, 49 F. Supp. 645, 651 (D. Kan. 1942)]).

Additionally, the sufficiency of Plaintiff's section 144 affidavit is undermined by the fact that it is based entirely on hearsay and conclusory opinion.  *See Hodgson v. Liquor Salesmen's Union*, 444 F.2d 1344, 1349 (2d Cir. 1971) ("The fact that an application is based entirely on hearsay may be taken into account in judging the sufficiency of the affidavit."); *see also Estate of Bishop v. Equinox Int'l Corp.*, 256 F.3d 1050, 1058 (10th Cir. 2001) ("Factors that *do not* merit disqualification include: rumor, speculation, beliefs, conclusions, or other non-factual matters . . . ." [emphasis in original]).  Where, as here, the hearsay statements fail to demonstrate personal bias and, moreover, are tenuously corroborated only by Plaintiff's own conclusory assertion that I "had [sic] personal bias or prejudice" against him, an affidavit is patently insufficient.  *See, e.g.*, *Winslow v. Lehr*, 641 F. Supp. 1237, 1241 (D. Colo. 1986) ("An affidavit

is deemed insufficient when it lacks facts showing a personal bias or prejudice, and contains only

insufficient conclusions.").  Moreover, the context in which the magistrate's comments were made

further impugns their reliability: they were made in an attempt to persuade Plaintiff to accept a

settlement offer.  (*See* Recusal Mot., Ex. 1 ¶¶ 2, 11 [Pl. Aff.].)

 Even if the words Plaintiff attributes to the magistrate had come directly from my own

mouth, there would *still* be authority counseling strongly against recusal.  While on the bench, on

the record, and in the presence of both parties, the district judge in *Phillip v. ANR Freight*

*Systems* rejected an employment discrimination plaintiff's offer of proof, stating:

> "All right.  I am not going to let them in, unproven allegations.  Just because
> lawsuits are filed doesn't give credibility to them, especially in these cases.  Those
> are Title VII cases.  Congress has created a nightmare because they entice anybody
> and everybody to file those things and entice any attorney to file them in the mere
> chance that if they win a dollar they can win attorney fees.  So I think any Title VII
> case ought to be looked at with suspicion to begin with because it's a crap shoot,
> which everybody engages in.  So I am going to deny it. . . ."

945 F.2d 1054, 1055 (8th Cir 1991).  In affirming the district judge's decision not to recuse

himself under section 455, the Eighth Circuit declared:

> Here, the district court judge voiced his feelings about Title VII, but recusal is not
> required where the judge has definite views as to the law of a particular case.
> Furthermore, "a motion for disqualification ordinarily may not be
> predicated . . . on a particular judicial leaning or attitude derived from his
> experience on the bench."

*Id.* at 1056 (quoting *Phillips*, 637 F.2d at 1020) (further citations and quotation marks omitted);

*see also United States v. Cooley*, 1 F.3d 985, 994 n.4 (10th Cir. 1993) (citing favorably to *ANR*

*Freight Systems*).  If the judge's on-the-record comments in *ANR Freight Systems* did not give

rise to a reasonable question about that judge's impartiality, then the hearsay statements of a

magistrate about another judge made during the throes of a confidential settlement conference

-10-

most certainly do not.[2]  Based on all of the foregoing, I find that Plaintiff's allegations are untimely, insufficient, and of such a quality that they would not cause a reasonable person to question my impartiality.

**3.**      ***Conclusion***

Based on the foregoing it is therefore ORDERED that:

PLAINTIFF's motion (#59) is DENIED.

Dated this 13th day of November, 2007

BY THE COURT:


s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
Chief United States District Judge

---

[2]I would be remiss not to acknowledge that there are also broader concerns in play here. If Plaintiff's affidavit is sufficient to require my recusal in the instant case, it is sufficient to force my recusal in *all* employment discrimination cases.  However, the Fifth Circuit has cautioned against recusal with such broad implications:

> [The party's affidavit] could be repeated, word for word, by literally any . . . civil rights plaintiff from now until [the district judge's] retirement. . . .  This is a type of recusal for whole classes of cases, without the constitutional safeguards that protect a judge from removal from office save by impeachment.  The Constitution does not contemplate that we dispense with a judge's service on such a grand scale on any but the most compelling showing.

*Phillips*, 637 F.2d at 1021; *accord Smith v. Sentry Ins.*, 752 F. Supp. 1058, 1062 (D. Ga. 1990) (rejecting recusal affidavit that "could be repeated, word for word, by virtually any disgruntled plaintiff from now until this judge's retirement").